IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 10-00804 DAE |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| EUGENE M. GERRARD, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

        Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motion and the supporting and

opposing memoranda, the Court **DENIES** Defendant's Motion for Bail Pending

Appeal (Doc. # 42).

BACKGROUND

        On November 9, 2010, a Grand Jury indicted Defendant Eugene M.

Gerrard ("Defendant") with knowingly possessing images and videos the

production of which involved the use of a minor engaging in sexually explicit

conduct in violation of 18 U.S.C. § 2252(a)(4) and (b)(2).  (See Doc. # 1.)  On

April 20, 2011, Defendant pled guilty to the indictment before United States

Magistrate Judge Kevin S.C. Chang.  (Doc. # 21.)  On May 10, 2011, this Court

accepted Defendant's guilty plea. (Doc. # 25.) On August 10, 2011, Probation

drafted a presentence report to which Defendant had no objection. (See "PSR,"

Doc. # 39 at 22.)

The presentence report described Defendant's misconduct as follows.

On March 14, 2008, an individual using the America On Line ("AOL") instant

messenger screen name of "Femtofemtouching" began to "chat" with an

undercover agent of the New York State Attorney General's Office ("UC"). (Id.

¶ 7.) The UC described herself as a 13-year-old female from Brooklyn, New York,

while the individual using the screen name "Femtofemtouching" described himself

as a 21-year-old female from Hawaii. (Id.) Information obtained in response to

subpoenas delivered to AOL and Hawaiian Telcom Services Company, Inc.,

revealed that the individual using the screen name "Femtofemtouching" was

Defendant. (Id. ¶¶ 8–9.) During the course of the March 14, 2008 "chat,"

Defendant electronically sent eight images of child pornography to the UC and

informed the UC that some of the photographs were of girls who were twelve or

thirteen years old and with whom he had previously chatted. (Id. ¶ 10.) Defendant

claimed that he had chatted with about eight girls who were thirteen years old.

During the "chat," Defendant made clear through lewd and graphic language that

he was engaging in cybersex with the UC. (See id. ¶ 11.) Defendant engaged in a

second "chat" with the UC on March 18, 2008 which was substantively the same as the March 14, 2008 "chat." (Id. ¶ 13.)

On July 25, 2008, the Government executed a search warrant on Defendant's residence and obtained three computers and a thumb drive. (Id. ¶¶ 14–15.) A forensic examination of Defendant's computers resulted in the identification of 944 still images and two videos depicting extremely graphic child pornography. (See id. ¶¶ 16–18.) The forensic examination of the computers also revealed approximately 1,020 emails which were either sent or received by Defendant; each contained one or more image files depicting child erotica or suspected child pornography. (Id. ¶ 19.)

Subsequent to the execution of the search warrant, Defendant acknowledged that he posed as an underage teenage girl in "chat rooms" on the internet. (Id. ¶ 20.) He also stated he chatted with three or four under-aged females. (Id. ¶ 21.)

On August 22, 2011, the Court sentenced Defendant. (See Doc. # 30.) The Court determined that the total offense level under the guidelines was twenty-six, with a criminal history category of one. ("Tr.," Doc. # 42-9, at 4.) The Court calculated the imprisonment range to be sixty-three to seventy-eight months. (Id.) Nonetheless, the Court granted a substantial variance and sentenced Defendant to

thirty months imprisonment and five years of supervised release.  (See Doc. # 30.)

Given Defendant's age and health conditions, the Court permitted Defendant to

remain on supervised release under home confinement until his self-surrender date

of October 11, 2011.  (Tr. at 24–26.)

On September 6, 2011, Defendant filed a Notice of Appeal.  (Doc.

# 32.)  Defendant filed a motion for bail pending appeal in front of the Ninth

Circuit which that court denied on September 26, 2011 "without prejudice to

renewal following presentation of the motion to the district court."  (Doc. # 41.)

On September 27, 2011, Defendant filed the instant Motion for Bail

Pending Appeal ("Motion") as well as a Motion for an Order Staying Self-

Surrender.  ("Mot.," Doc. # 42; Doc. # 43.)  On September 28, 2011, the Court

granted Defendant's Motion for an Order Staying Self-Surrender pending

resolution of the instant Motion and directed Defendant to self-surrender on

October 31, 2011.  (Doc. # 45.)

On October 17, 2011, the Government filed an Opposition to the

instant Motion.  ("Opp'n," Doc. # 47.)  On October 19, 2011, Defendant filed a

Reply.  ("Reply," Doc. # 49.)

<u>STANDARD OF REVIEW</u>

18 U.S.C. § 3143(b) governs whether a defendant should be released

or detained pending an appeal by a defendant. It provides as follows:

> (1) Except as provided in paragraph (2), the judicial officer
> shall order that a person who has been found guilty of an offense and
> sentenced to a term of imprisonment, and who has filed an appeal or a
> petition for a writ of certiorari, be detained, unless the judicial officer
> finds—
>
> > (A) by clear and convincing evidence that the person is
> > not likely to flee or pose a danger to the safety of any
> > other person or the community if released under section
> > 3142(b) or (c) of this title; and
> >
> > (B) that the appeal is not for the purpose of delay and
> > raises a substantial question of law or fact likely to result
> > in—
> > > (i) reversal,
> > > (ii) an order for a new trial,
> > > (iii) a sentence that does not include a term
> > > of imprisonment, or
> > > (iv) a reduced sentence to a term of
> > > imprisonment less than the total of the time
> > > already served plus the expected duration of
> > > the appeal process.

18 U.S.C. § 3143(b)(1). Pursuant 18 U.S.C. § 3143(b)(2), a defendant convicted of

a "crime of violence," and sentenced to a term of imprisonment, is subject to

mandatory detention pending appeal. <u>See</u> <u>id.</u> § 3143(b)(2) ("[A] person who has

been found guilty of an offense in a case described in . . . subsection (f)(1) of

section 3142 and sentenced to a term of imprisonment, and who has filed an

appeal [shall] be detained."); id. § 3142(f)(1) (describing crimes of violence).

Child pornography offenses, including the possession of child pornography, are

"crimes of violence." See id. § 3156(a)(4)(c). Nonetheless, section 3145(c)

provides an exception to section 3143(b)(2). Specifically, bail may be granted

pending appeal where a defendant has been convicted of a crime of violence and

sentenced to imprisonment provided that the defendant (1) has "clearly shown that

there are exceptional reasons why such person's detention would not be

appropriate" and (2) satisfies "the conditions of release set forth in

section 3143 . . . (b)(1)." Id. § 3145(c).

## DISCUSSION

Defendant was convicted of possession of child pornography, which is

a "crime of violence" as defined in 18 U.S.C. § 3156. Defendant was also

sentenced to a term of imprisonment. Accordingly, Defendant must be detained

pending appeal per 18 U.S.C. § 3143(b)(2) unless he can satisfy the requirements

of 18 U.S.C. § 3145(c). Specifically, Defendant must (1) satisfy "the conditions of

release set forth in section 3143 . . . (b)(1)" and (2) "clearly show[] that there are

exceptional reasons why [his] detention would not be appropriate" Id. § 3145(c).

Because Defendant has failed to satisfy either prong of section 3145(c), the Court

denies his Motion.

I.      Section 3143(b)(1)

Defendant claims that he has satisfied the requirements of 18 U.S.C.

§ 3143(b)(1).  Per section 3143(b)(1)(A), Defendant maintains that, as the Court

earlier found, he "poses neither a flight risk nor a danger to any other person or the

community if he remains on bail, subject to the same conditions already imposed

by this Court, pending appeal in this matter."  (Mot. at 9.)  With respect to section

3143(b)(1)(B), Defendant contends that "[t]he purpose of [Defendant's] appeal is

not to delay things, and his appeal raises a substantial question of law or fact that is

likely to result in reversal of his sentence and either a non-imprisonment sentence

or a sentence of reduced imprisonment on remand."  (Mot. at 10.)  The Court

disagrees with this latter contention; Defendant has not demonstrated that he plans

to raise on appeal a substantial question of law or fact that is likely to result in

reversal of his sentence, a non-imprisonment sentence, or sentence of reduced

imprisonment on remand.

As discussed, section 3143(b)(1)(B) states that, for a defendant to be

entitled to bail pending appeal:

> (B) that the appeal is not for the purpose of delay and raises a
> substantial question of law or fact likely to result in—
>> (i) reversal,
>> (ii) an order for a new trial,
>> (iii) a sentence that does not include a term of
>> imprisonment, or

(iv) a reduced sentence to a term of imprisonment less
than the total of the time already served plus the expected
duration of the appeal process.

18 U.S.C. § 3143(b)(1)(B).  The Ninth Circuit has bifurcated the analysis under

this subsection into two distinct tests.  First, a court must determine whether the

appeal raises a substantial question of law.  The Ninth Circuit has held "that an

issue is substantial if it is 'fairly debatable' or 'fairly doubtful,' that is, 'of more

substance than would be necessary to a finding that it was not frivolous.'"  United

States v. Garcia, 340 F.3d 1013, 1020 n.5 (quoting United States v. Handy, 761

F.3d 1279, 1283 (9th Cir. 1985)).  "The second part of the [section 3143(b)(1)]

requirement—that the question be likely to result in reversal, a new trial, a non-

prison sentence, or a sentence reduced to less than the time that would be served by

the end of the appeal process—concerns only the type of question that meets the

requirement; it does not involve assessing the likelihood that a reversal will occur

in the particular case."  Id. (quoting Handy, 761 F.3d at 1280).  In sum then, a

defendant need only present "a non-frivolous issue that, if decided in the

defendant's favor, would likely result in reversal or could satisfy one of the other

four conditions."  Id.

        The Court concludes here that Defendant's appeal does not raise a

"substantial question of law or fact" because he has not raised an issue that is

"fairly debatable" or "fairly doubtful."  See id.; Handy, 761 F.3d at 1283; 18

U.S.C. § 3143(b)(1).  The gravamen of Defendant's appeal is that this Court erred

in sentencing Defendant by relying "on its personal knowledge rather than the

evidentiary record."  (Mot. at 11; see id. at 10–15.)  This simply is not the case.

In his Motion, Defendant proffers three examples of the Court relying

on its "personal knowledge" to reach the sentence that it did.  First, with respect to

Defendant's "chats" with the UC, the Court observed that Defendant

> was able to gain a sense of intimacy with these young girls that they
> would in all likelihood have some difficulty providing to a male
> figure.
>      After all, you know, 12 and 13-year-old girls are used to
> going into locker rooms and changing with other girls.  They are not
> as—naturally not as concerned about exposing their body or sending a
> picture of their body unclothed to another woman as they would be to
> a man.  And it's particularly troubling for a young girl who might be
> in some ambivalence about her own sexuality trying to figure out
> exactly what her feelings are.  He preyed on all of that.

(Tr. at 13.)  Defendant asserts this Court erred in making this observation because

"[n]othing in the evidentiary record . . . supported such findings regarding the

proclivities of teenage girls."  (Mot. at 12.)

Defendant also accuses the Court of wrongly finding that Defendant

"caused great harm by his actions to these young girls."  (Tr. at 14.)  Specifically

Defendant takes issue with the Court's observation that

if there's any suggestion that this kind of thing can't result in devastating consequences, there is—we know that young people who are bullied, even though they may not be physically touched, or who are taunted about their sexuality or are tricked about their sexuality, it's documented that many of these young people commit suicide. So, while the perpetrator may not have physically reached out and touched them, they touched their psyche in such a way to cause them monumental damage.

(Id.)  Defendant argues that this was error because "[n]o evidence was adduced about any such psychological harm."  (Mot. at 13.)

Finally, Defendant takes issue with this Court's observation that

We don't know . . . for sure [that Defendant has not engaged in similar criminal behavior while on release pending sentencing], because like other people in Honolulu, he has access to cyber cafes and other places where computers can be used and where there are no filters that would keep people from using pornography.  And we have found in instances, and I have been at this a long time . . . , where . . . people were out on supervision.  They didn't have access to a home computer, and so they went to a cyber café or went to some other location where they were able to use a computer, and they did their little chats there.
      And we had—I remember one case where we actually had the person caught.  That was many, many years ago.  It doesn't happen often, but it does happen.

(Tr. at 16.)  Once again, Defendant observes that "the evidentiary record in this matter did not support such findings."  (Mot. at 14.)

The characterization of these snippets from the sentencing transcript as "evidentiary findings" can only be characterized as frivolous.  These are not "factual findings," but instead common sense observations based on the Court's

10

judgment and experience.  The Court was well within its rights to make these observations.  See United States v. Autery, 555 F.3d 864, 875 (9th Cir. 2009) ("Nothing in [3553(a)(1)] requires the district court to base its application of the factor on the PSR, scientific studies, or anything other than the court's experience and judgment."); United States v. Warr, 530 F.3d 1152, 1163 (9th Cir. 2008) (finding a district court did not err when it relied upon a "well-known, common sense proposition that younger offenders are more likely to recidivate."); United States v. Robelo, 596 F.2d 868, 870 (9th Cir. 1979) (sentencing judges allowed "to draw reasonable inferences"); Shah v. United States, 878 F.2d 1156 (9th Cir. 1989) (sentencing judges may rely on common sense in sentencing); see also Untied States v. Johnson, 964 F.2d 124, 125 (2d Cir. 1992) ("The United States Sentencing Guidelines do not require a judge to leave . . . common sense at the door to the courtroom.").

In light of these principles, it is clear not only that the Court did not err in making these observations, but also that it is not "fairly debatable" or "fairly doubtful" that it was error.  See Garcia, 340 F.3d at 1020 n.5; Handy, 761 F.3d at 1283; 18 U.S.C. § 3143(b)(1).  The Court could of course rely on its experience and common sense to observe that a teenage girl would be more likely to reveal her nudity to and discuss her sexuality with a woman closer to her own age than with a

man in his eighties.  (Tr. at 13.)  It was also common sense for the Court to

conclude that Defendant's online activities caused harm, even though Defendant

did not actually touch the minors.  (Tr. at 14.)  Indeed, this proposition is actually

well-established in Ninth Circuit jurisprudence.  See, e.g., United States v. Daniels,

541 F.3d 915, 924 (9th Cir. 2008) ("[A]s the district court reminded [the

defendant] at sentencing, merely possessing child pornography is not a victimless

crime; it fuels the demand for the creation and distribution of child pornography

[and] children suffer when they are used in the creation of child pornography and

when that pornography is distributed to others.").  Finally, this Court's remark that

it was not in a position to know definitively whether Defendant had violated the

terms of his release was clearly common sense.  (Tr. at 16.)  As the Court stated, it

would have been entirely possible for Defendant to access the internet at a public

place and engage in these chats.  Observing as much was not error.

      Defendant relies on two Ninth Circuit decisions to argue that "it is

plain error for a district court . . . to justify its sentence with factual findings that

are based on the judge's own knowledge and personal experience."  (Mot. at

15–16.)  Defendant's strained reliance on these cases in an attempt to argue it is

"fairly debatable" whether this Court erred is not persuasive.

Defendant first relies on Hurles v. Ryan, 650 F.3d 1301 (9th Cir. 2011), to argue that a district court errs when it finds facts "based on [its] own recollections and factual assertions." (Mot. at 16.) This tortured assertion is precariously close to misleading. As a preliminary matter, Hurles involved a habeas petition challenging a state court sentencing, not a federal sentencing. Second, the court that erred by finding facts "based on her own recollections and factual assertions" was not the district court judge, but a state court judge. 650 F.3d at 1311–12. Further, the fact finding at issue stemmed from the defendant's assertion that the state court judge "was improperly involved in [a] special action proceeding before the Arizona Court of Appeals, in which [the defendant] had appealed her denial of his request for additional counsel." Id. at 1311. It had nothing to do with a sentencing. Indeed, the conduct with the Ninth Circuit condemned was as follows:

> [Defendant] argued that [the state court judge's] involvement in the special action . . . rendered her unfit to continue presiding over his trial and sentence and that she should have recused herself.
>
> Instead of providing a forum for [defendant] to present and develop evidence to establish his claim, [the state court judge] "found" facts based on her own recollections and factual assertions about her conduct. She concluded that she was not in fact involved in the Special Action proceeding, that the brief filed in her name was not her brief, and that statements in the brief could not be attributed to her. In effect, she testified through her order denying [defendant's] second petition for post-conviction relief.

13

Id. at 1311–12.  It is self-evident that Hurles is inapposite.  There is no assertion that this Court wrote a brief in this case on behalf of the Government, this is not a special proceeding before an appellate tribunal, nor has this Court written an order in which it "found facts" to determine whether the Court wrote a brief.  See id. This is a federal sentencing, where the Court relied on its experience, judgment, and common-sense to sentence Defendant.  Suffice it to say, Defendant's reliance on Hurles is not persuasive.

Defendant's second piece of authority, Buffalo v. Sunn, 854 F.2d 1158 (9th Cir. 1988), is similarly unpersuasive.  Once more, before the Ninth Circuit was a habeas petition, not a sentencing appeal.  See id.  The Ninth Circuit held that "[i]n a habeas case, when there are only conflicting affidavits regarding the facts underlying the issue of cause, the district court must hold an evidentiary hearing."  Id. at 1158.  The Ninth Circuit therefore concluded that it is error for a district court to "rel[y] on his own personal knowledge" in resolving a dispute generated by conflicting affidavits.  See id. at 1165.  This case is also inapposite. Here, the Court certainly did not resolve a dispute between the parties, supported by affidavits, based purely on its own personal knowledge.  Again, the instant matter involved a sentencing where the Court made common-sense observations as permitted by Ninth Circuit case law.  See Autery, 555 F.3d at 875; Warr, 530 F.3d

14

at 1163; <u>Robelo</u>, 596 F.2d at 870; <u>Shah</u>, 878 F.2d at 1159; <u>see also</u> <u>Johnson</u>, 964 F.2d at 125.

Defendant also asserts that these findings "were the <u>only</u> support it articulated for imposing a sentence of imprisonment in this matter." (Mot. at 17 (emphasis in original).) This assertion is simply belied by the record. In concluding that Defendant should be incarcerated rather than sentenced to probation, the Court discussed the length of time the defendant engaged in criminal behavior, the defendant's deceptive method of engaging in the misconduct, the fact that defendant fueled the market for child pornography by collecting it, the defendant's distribution of child pornography, the defendant's capacity to reoffend, and the need for general deterrence. (<u>See</u> Tr. at 11–17.) In sum, this Court based its rather lenient sentence in this case upon its careful consideration of the so called "3553" factors and not on its personal observations as suggested.

Accordingly, Defendant has failed to raise a substantial question of law, or a question that is "fairly debatable" or "fairly doubtful." <u>See</u> <u>Garcia</u>, 340 F.3d at 1020 n.5; <u>Handy</u>, 761 F.3d at 1283; 18 U.S.C. § 3143(b)(1). This is sufficient reason to deny Defendant's Motion.

II.    Exceptional Circumstances

In addition to satisfying the conditions of release set forth in section 3143(b)(1), a defendant seeking bail pending appeal must also "clearly show[] that there are exceptional reasons why [his] detention would not be appropriate." Id. § 3145(c).  Defendant here has failed to demonstrate that there are "exceptional reasons" why his detention is not appropriate and, thus, even assuming he satisfied the requirements of 3143(b)(1), he still would not be entitled to bail pending appeal.

"'By adopting the term 'exceptional reasons,' and nothing more [in section 3145(c)], Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct.'" Garcia, 340 F.3d at 1018 (quoting Mozes v. Mozes, 239 F.3d 1067, 1073 (9th Cir. 2001)).  "[A] court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors (bearing in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional cases, be released pending appeal) it would be unreasonable to incarcerate the defendant prior to the appellate court's resolution of his appeal." Id. at 1019.

16

Although the Ninth Circuit has placed "no limit on the range of matters the district court may consider," it has enumerated a few factors which courts may consider.  See id. at 1018–19.  "For example, one exceptional circumstance that might justify release under § 3145(c) would be that the defendant's criminal conduct was aberrational.  A defendant with no prior history of violence may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance."  Id. at 1019.  "The nature of the violent act itself may also be significant. . . . Under appropriate circumstances, for example, if the act was violent, but did not involve any specific intent—or if it did not involve any threat or injury to persons—the district court might find that in some cases the general rule in favor of detention is less likely to be applicable."  Id.  The length of the prison sentence—both the maximum and the sentence imposed—may also be relevant.  Id.  "The district court might also consider circumstances that would render the hardships of prison unusually harsh for a particular defendant. Chief among such circumstances is a sufficiently serious illness or injury."  Id.  A court may also consider the nature of defendant's arguments on appeal, whether the defendant is "exceptionally unlikely" to flee or constitute a danger to the community, and whether the defendant was unusually cooperative with the government.  Id. at 1020–21.

While weighing these factors, a court must remember that "the general rule must remain that conviction for a covered offense entails immediate incarceration. Only in truly unusual circumstances will a defendant whose offense is subject to the statutory provision be allowed to remain on bail pending appeal." Id. at 1022.

On balance, the Court concludes that the totality of the circumstances do not weigh in favor of finding this is a "truly unusual circumstance" such that Defendant should be allowed to remain on bail pending appeal. Id. As a preliminary matter, it is clear that at least one of these factors weigh in Defendant's favor. Specifically, the Court is under no illusions that Defendant's age and infirmities would make prison difficult for the Defendant. Id. at 1019. As outlined in his Motion:

> [Defendant's] prostate was removed in 2002, and, as a result he is unable to leave his home for more than a few hours at a time. His treating physician also verifies that [Defendant] suffers from various chronic medical conditions that restrict his ability to travel. For [Defendant], it is readily apparent that his medical condition, especially when coupled with his age, would make the hardships of prison unusually harsh.

(Mot. at 20 (citations and quotation marks omitted).)  While the Court questions to some extent the degree of this assertion,[1] it generally agrees that this factor weighs in Defendant's favor.  Indeed, age and infirmity was, the reason this Court allowed Defendant to self-surrender rather than immediately order him into custody and granted a generous variance downward in sentencing the Defendant.  (See Tr. at 24–26.)

The remaining factors, however, cannot be said to weigh in Defendant's favor.  Despite Defendant's protestations to the contrary, his conduct was in no way aberrational—he engaged in this misconduct for at least six years prior to his arrest.  Defendant concedes as much in his Motion.  (Mot. at 10 n.11.) Defendant's attempt to argue that his misconduct should nonetheless be characterized as "aberrational" because he "had no idea that what he was doing was illegal" is not persuasive.  (Id.)  First, the Court seriously doubts that Defendant did not realize that sending child pornography to underage children was illegal.  Second, Defendant has provided no case law which suggests that

---

[1] Specifically, the Court has a difficult time crediting the physician's testimony that Defendant is "unable to leave his home for more than a few hours at a time" given that Defendant was able to fly from the Big Island to Honolulu for his sentencing.

determining whether conduct was "aberrational" turns on a Defendant's knowledge. To the contrary, the Ninth Circuit has characterized "aberrational" conduct as conduct where "[a] defendant with no prior history of violence may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance." <u>Garcia</u>, 340 F.3d at 1019. Defendant certainly was not provoked into engaging in this misconduct. Finally, Defendant posed as a female to speak with underage women; he was well aware that his actions were, at a minimum, grossly deceptive.

The Court also concludes that the nature of the violent act suggests Defendant should be incarcerated pending appeal. <u>See id.</u> As the Court observed at the sentencing, and as is well established in Ninth Circuit jurisprudence, "merely possessing child pornography is not a victimless crime; it fuels the demand for the creation and distribution of child pornography[, and] children suffer when they are used in the creation of child pornography and when that pornography is distributed to others." <u>See</u> <u>Daniels</u>, 541 F.3d at 924. Moreover, Defendant did not merely possess child pornography, he "chatted" with underage girls and sent to them <u>and</u> obtained from them child pornography. Given that the nature of Defendant's

misconduct results in the creation and dissemination of child pornography, this factor also weighs against bail pending appeal.

With respect to the length of the prison sentence—both the maximum and the sentence imposed—this factor also weighs in favor of incarceration. Garcia, 340 F.3d at 1019. The Ninth Circuit has said "the length of the sentence may be a proxy for the seriousness of the crime." Id. Here, the maximum sentence per the guidelines range was seventy-eight months, which reflects a very serious crime. Moreover, although the Ninth Circuit has stated that short sentences "weakly implicate" the Mandatory Detention Act because "defendant could be forced to serve most or all of his sentence before his appeal has been decided," the Court rather doubts that it will take the Ninth Circuit thirty months to decide Defendant's appeal. See id.

The next factor—the strength and nature of the arguments on appeal—plainly weighs in favor of denying bail. See id. As discussed supra, Defendant's arguments simply lack merit. Further, Defendant has not challenged this Court's calculation of the guidelines range or his criminal history category. Nor did this Court vary upwards. To the contrary, the Court considered Defendant's age and infirmity and greatly varied downward against the recommendation of the probation office which had suggested a much more

substantial prison sentence of sixty-three months given the seriousness of

Defendant's misconduct.  Thus, this factor weighs in favor of denying Defendant's

bail pending appeal.

Whether the defendant is "exceptionally unlikely" to flee or constitute

a danger to the community also weighs in favor of detention.  See id. at 1020–21.

While the Court agrees Defendant is unlikely to flee, as discussed, the Court has

grave concerns about the danger Defendant poses to the community.  As the Court

noted at the sentencing:

> I do think . . . he still poses a danger to the community. . . .
> [O]bviously, he was a pretty stealthy individual.  I mean I don't think
> that his wife knew about this.  Certainly the community didn't know
> about it.  He was able to keep these things from them.  And that's the
> Court's concern.

(Tr. at 25.)  Thus, although unlikely to flee, the Court certainly cannot conclude it

is "exceptionally unlikely" that Defendant no longer poses a threat to the

community.  To the contrary, the Court finds it is more than likely that, absent

incarceration, Defendant will continue to pose a serious threat to the community.

Finally, the last factor, whether the defendant was unusually

cooperative with the government, is at best neutral.  Id. at 1021.  Although

Defendant admitted his misconduct to authorities, the concerns underlying this

factor as articulated by the Ninth Circuit are not satisfied. Specifically, the Ninth Circuit noted that "[a]lthough . . . cooperation may result in a substantial societal benefit, it may also render the defendant exceptionally vulnerable to injury in prison." Id. Defendant has proffered no argument or evidence which suggests that Defendant's admissions to the Government will somehow render him more vulnerable to injury in prison.

Accordingly, the factors outlined in the Ninth Circuit in Garcia weigh in favor of incarceration pending appeal. In addition to these factors, a court must consider the "totality of the circumstances" and there is "no limit on the range of matters the district court may consider." Id. at 1018–19. The Court therefore further observes that this crime was particularly heinous given its deceptive nature. Moreover, it was sustained over the course of at least six years. There is no way of knowing exactly how many children he "chatted" with over the course of those six years, though the fact that there were over 1,000 emails which had attached to it at least one image of child pornography suggests to the Court the number was extremely large. Defendant is an individual who, by his conduct, demonstrated a strong sexual attachment to underage girls and continues to present a grave threat to society. In this Court's judgment, releasing him on bail pending appeal would be an invitation for Defendant to further harm society at large.

It is also worthy of note that Defendant prayed on the most vulnerable individuals in society—prepubescent children who are extremely susceptible to manipulation by adults. This is especially the case where the child believes an adult to be of the same gender and relatively close in age. Defendant knew this and posed as a young woman to gain these children's confidence. As Defendant himself has shown, one does not need to be a young adult in perfect health to perpetrate these crimes. These additional factors further counsel against granting bail pending appeal.

As the Ninth Circuit has stated, "the general rule must remain that conviction for a covered offense entails immediate incarceration. Only in truly unusual circumstances will a defendant whose offense is subject to the statutory provision be allowed to remain on bail pending appeal." Id. at 1022. This is simply not an exceptional case. To the contrary, the Court believes this is the quintessential case that motivated Congress to require Defendants who have committed crimes like these to immediately be detained notwithstanding an appeal per 18 U.S.C. § 3143(b)(2).

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion for Bail
Pending Appeal (Doc. # 42).



IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 28, 2011.


_____
David Alan Ezra
United States District Judge




United States v. Eugene M. Gerrard, Cr. No. 10-00804 DAE; ORDER DENYING
DEFENDANT'S MOTION FOR BAIL PENDING APPEAL